BOHEMIAN–AMERICAN WORKINGMEN'S GYMNASTIC ASS'N (SOKOL) v. NORTHERN BANK OF NEW YORK.

(Supreme Court, Appellate Term. · December 29, 1909.)

DAMAGES (§ 125*)—MEASURE—BREACH OF CONTRACT—CONTRACT FOR LOAN.
  The complaint alleged that defendant agreed to loan plaintiff $80,000 at 6 per cent. interest for the erection of a building and to superintend its erection for a sum equal to 4 per cent. additional interest, which it refuses to do, and that plaintiff was unable to procure the entire performance of such agreement by others, but was able to procure a loan of $60,-000 at 6 per cent. interest, with an additional 6 per cent. for superintending the erection of the building, whereby plaintiff was damaged in the sum of $1,200. The evidence failed to show that plaintiff was damaged by not obtaining an $80,000 loan at 6 per cent., or that a loan of $60,000 was not sufficient for its purpose, and it did not appear that the cost of superintendence was greater for an $80,000 loan than for a $60,-000 loan. *Held*, that plaintiff could recover the actual additional cost of

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

procuring the loan and the difference between the cost of superintendence of an $80,000 loan at 4 per cent. and of a $60,000 loan, at 6 per cent.

[Ed. Note.—For other cases, see Damages, Cent. Dig. § 343; Dec. Dig. § 125.*]

Goff, J., dissenting.

Appeal from City Court of New York, Trial Term.

Action by the Bohemian-American Workingmen's Gymnastic Association (Sokol) against the Northern Bank of New York. From a judgment for plaintiff upon a directed verdict, and an order denying a new trial, defendant appeals. Reversed, and new trial ordered, unless plaintiff accepts a less sum, in which event judgment, as reduced, is affirmed.

Argued before GIEGERICH, GOFF, and LEHMAN, JJ.

Gifford, Hobbs & Beard (John D. Fearhake, of counsel), for appellant.

Solon J. Liebeskind, for respondent.

LEHMAN, J.   The plaintiff alleges in its complaint that the defendant agreed to loan the plaintiff the sum of $80,000 as a building loan, and the plaintiff agreed to pay 6 per cent. interest thereon, and the further sum of $3,200, equal to 4 per cent. on such loan for the services of the defendant in the supervision and erection of said building.   It further alleges that the defendant refused to perform the said agreement; that the plaintiff was obliged to procure the performance of the agreement by other persons, "but was unable to procure the performance of the aforesaid agreement on the part of the defendant to be performed in its entirety in that the plaintiff was unable to procure from any other person or party the loan of the full sum of eighty thousand ($80,000) dollars, which the defendant agreed to loan under the aforesaid agreement, and was only able to procure a partial performance of the defendant's aforesaid agreement and contract, by procuring a loan of sixty thousand ($60,000) dollars, and * * * was obliged to and did pay upon the aforesaid sum, besides the interest thereon, the sum of thirty-six hundred ($3,600) dollars, being six (6%) per cent., in place of four (4%) per cent., for the said service of superintendence, which the defendant agreed to make the aforesaid loan for, and by reason of the breach on the part of the defendant of its aforesaid agreement the plaintiff has been damaged in the sum of twelve hundred ($1,200) dollars, being the difference in the, amount of compensation for the service of superintendence as aforesaid, which the plaintiff would have been obliged to pay the defendant upon making the said loan to the extent of sixty thousand ($60,-000) dollars, and the amount of such compensation which the plaintiff was obliged to pay the said person or party under the agreement to make the said loan of sixty thousand ($60,000) dollars, in partial performance of the defendant's aforesaid agreement, in the place and stead of the defendant."   At the trial there was no substantial conflict of testimony, and the trial justice directed a verdict for the plaintiff

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

for said sum of $1,200, plus $86.75 for certain disbursements and interest.

The only serious question raised in the court below concerned the measure and proof of damages. The plaintiff is not relying on the proof of general damages, but has alleged and sought to prove as special damage the extra cost of procuring the necessary loan after the defendant's default. These damages were the natural consequence of the conditions known to both parties when the first agreement was made, and were such as the parties may fairly be supposed to have contemplated when they made the contract. The plaintiff was, therefore, entitled to receive as damages the actual additional cost of procuring the loan. The defendant claims that there was no additional cost, since the cost of the original loan was 6 per cent. on $80,000 for interest and 4 per cent. for the cost of superintendence, making a total of $8,000, while the cost of the second loan was only 6 per cent. on $60,000 for interest and 6 per cent. for the cost of superintendence, making a total of only $7,200. I think this claim is not tenable. The plaintiff tried to obtain a loan of $80,000, and the court was justified in believing that, if it had obtained the additional sum of $20,000 at the same rate of 6 per cent. interest, this would not have been a detriment to it. On the other hand, the plaintiff claimed that the extra cost of obtaining the loan must be figured on a percentage basis; that is, since it was to obtain the first loan at a total cost, including superintendence, of 10 per cent., and the second loan at a cost, including superintendence, of 12 per cent., it is entitled to 2 per cent. on the amount of the loan actually procured, or $1,200. The plaintiff has overlooked, in making this claim, that it is not attempting to show as general damages the difference between the value of the loan which defendant agreed to make and the value of the best loan which it could obtain in the money market at that time, but is attempting to show only the special damages which it suffered by reason of being obliged to procure the second loan. Apparently for its purpose a building loan of $60,000 was sufficient; nor is there any evidence that the cost of superintendence is greater for a loan of $80,000 than for a loan of $60,000. It was obliged to pay a charge for superintendence on this loan of $3,600, instead of $3,200; and this, upon the proof presented, represented the plaintiff's damage. The court should have directed a verdict of only $486.75, with interest, instead of $1,286.75.

Judgment should be reversed, and a new trial ordered, with costs to appellant to abide the event, unless the plaintiff stipulates to reduce the judgment to the sum of $486.75, and interest and costs in the court below; and in that event the judgment, as so reduced, should be affirmed, without costs to either party upon this appeal.

GIEGERICH, J., concurs.

GOFF, J. (dissenting). In planning the erection of a building and supervising its erection, an architect, no less essentially than a carpenter, mason, or materialman, adds to its value. In erecting a building at a cost of $80,000, exclusive of architect's services, of which the market value is 6 per cent., those services add 6 per cent. of $80,000

to its value. Cost is some evidence of value, and the only evidence before us, except as to the value of an architect's services. The value of the building which plaintiff proposed to erect, including those services, would therefore be $84,800. That would be its value in exchange. It could be converted into that amount of money. But defendant contracted to furnish the services of an architect at 4 per cent., 2 per cent. under market rates, so that the actual cost of the proposed building would have been $83,200. Plaintiff's balance sheet, after changing book values to real values, would show a profit of $1,600. Owing to defendant's breach of contract, plaintiff will have a building costing $60,000, plus $3,600 for architect's services at the usual rate, or $63,600 in all, and it will have a building worth $63,600. Its balance sheet will show no profit. Plaintiff has been damaged in the sum of $1,600, in addition to small items of damage found by the trial court; but, as plaintiff claims a smaller amount, and no more than has been awarded, the judgment should be affirmed, with costs.